1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TINA SHEPARD,

               Plaintiff,

    v.

UNITEDHEALTHCARE OF
OREGON, INC., and DOES I–III,

               Defendants.

CASE NO. 2:24-cv-01495-MJP

ORDER DISMISSING IN PART

**INTRODUCTION**

    This matter comes before the Court on Defendant UnitedHealthcare of Oregon, Inc.'s Motion to Dismiss In Part. (Dkt. No. 16.) Having reviewed the Motion, Plaintiff Tina Shepard's response (Dkt. No. 18), the reply (Dkt. No. 23), and all other supporting materials, the Court GRANTS the Motion.

**BACKGROUND**

Plaintiff purchased health coverage from UHC through Washington's insurance exchange. (First Amended Complaint (Dkt. No. 9) ¶ 11.) UHC offers an "AutoPay" option to its customers, to "ensure [their] monthly premium is paid each month worry-free." (Id. ¶ 16.) In 2023, Plaintiff renewed her coverage with UHC and enrolled in AutoPay, receiving an email from the company reading "[s]ince you're enrolled in Autopay, you don't have to do anything extra to renew your coverage for 2024. Autopay will automatically update to your new rate." (Id. ¶¶ 14–15.)

During a May 2024 screening for breast cancer, Plaintiff was told by her medical provider that "she had no health insurance" and so "would have to pay out of pocket for that day's cancer scan." (FAC ¶¶ 17–18.) When Plaintiff reached out to UHC, she was told that "her coverage had terminated effective February 29, 2024," due to failure to pay her January 2024 premium. (Id. ¶ 20.) Plaintiff alleges that although UHC charged her credit card each month from February through May 2024, she received no notice regarding an outstanding premium payment for January 2024. (Id. ¶¶ 21–23.) Plaintiff did not receive an explanation as to why UHC failed to charge her card for the January 2024 payment and ultimately lost her health coverage, forcing her "to forgo medically necessary treatment like MRIs and future cancer screenings," and to pay out-of-pocket for medical treatment for herself and her family. (Id. ¶¶ 24–29.)

Plaintiff filed her complaint on August 15, 2024, in King County Superior Court. (See Complaint (Dkt. No. 1-1).) UHC timely removed the complaint to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (See Notice of Removal (Dkt. No. 1).) UHC then moved to dismiss the complaint but withdrew that motion upon Plaintiff amending her

1  complaint. (Dkt. Nos. 9, 17.) UHC has now renewed its motion to dismiss three of the five

2  claims brought by Plaintiff. (Dkt. No. 16.)

3  **ANALYSIS**

4  A.    Legal Standard

5         Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

6  claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

7  construe the complaint in the light most favorable to the non-moving party and accept all well

8  pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,

9  416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658,

10  661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts

11  to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

12  570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows

13  the court to draw the reasonable inference that the defendant is liable for the misconduct

14  alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must provide "more than

15  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

16  do." Twombly, 550 U.S. at 555.

17  B.    Breach of Fiduciary Duty

18         UHC argues that Plaintiff's Breach of Fiduciary Duty claim should be dismissed because

19  she has failed to plausibly allege that the parties entered into a principal-agent relationship. (Mot.

20  at 5–7.) The Court agrees.

21         Under Washington law, breach of a fiduciary duty imposes liability in tort. Miller v. U.S.

22  Bank of Washington, N.A., 72 Wn. App. 416, 426 (1994). To prevail on such a claim, plaintiffs

23  "must establish: (1) the existence of a duty owed [to them]; (2) a breach of that duty; (3) a

24

1    resulting injury; and (4) that the claimed breach was the proximate cause of the injury." <u>Hansen</u>

2    <u>v. Friend</u>, 118 Wn.2d 476, 479 (1992). Whether a legal duty exists is a question of law. <u>Id.</u> The

3    dispute at hand is whether UHC owed any true fiduciary duty to Plaintiff.

4         The Parties agree that, as a matter of law, UHC does not owe a true fiduciary duty to

5    Plaintiff by virtue of their insurer-insured relationship. Washington courts have "specifically

6    rejected" arguments claiming that "a true fiduciary relationship exists between an insurer and an

7    insured." <u>See</u> <u>Safeco Ins. Co. of Am. v. Butler</u>, 118 Wn.2d 383, 390 (1992) (citing <u>Tyler v.</u>

8    <u>Grange Ins. Ass'n</u>, 3 Wn. App. 167, 176–77 (1970)). Instead, courts consider the insurer-insured

9    relationship as "quasi-fiduciary," or "something less than a true fiduciary relationship." <u>Van Noy</u>

10   <u>v. State Farm Mut. Auto. Ins. Co.</u>, 142 Wn.2d 784, 793 (2001). The quasi-fiduciary relationship

11   imparts an "enhanced duty of good faith which requires [the insurer] to deal fairly giving equal

12   consideration to its insureds." <u>Id.</u> at 794 (quoting <u>Tank v. State Farm Fire & Cas. Co.</u>, 105 Wn.2d

13   381, 386 (1986)). UHC does not challenge the existence of a quasi-fiduciary relationship, nor

14   seeks to dismiss Plaintiff's claim that the insurer breached its corresponding duty of good faith.

15   (<u>See</u> Mot. at 7 (citing FAC ¶¶ 41–45).)

16        However, Plaintiff argues that upon accepting the autopay agreement—which was

17   extraneous to the insurer-insured relationship—UHC owed her a fiduciary duty as her agent.

18   (Resp. at 8–12; FAC ¶ 34.) "[A]n agency relationship results from the manifestation of consent

19   by one person that another shall act on his behalf and subject to his control, with a correlative

20   manifestation of consent by the other party to act on his behalf and subject to his control." <u>Bain</u>

21   <u>v. Metro. Mortg. Grp., Inc.</u>, 175 Wn.2d 83, 106 (2012) (quoting <u>Moss v. Vadman</u>, 77 Wn.2d

22   396, 402–03 (1970)). "Control is not established if the asserted principal retains the right to

23   supervise the asserted agent merely to determine if the agent performs in conformity with the

24

contract," but instead requires the principal to "control[] the manner of performance." Uni-Com Nw., Ltd. v. Argus Pub. Co., 47 Wn. App. 787, 796 (1987). Where there is no factual dispute, the existence of a principal-agent relationship is a question of law. Id.

The Court finds that Plaintiff cannot show that she controlled the manner of UHC's performance of the autopay agreement beyond mere supervision. This dispute appears to be a run-of-the-mill breach of contract dispute between a buyer and seller rather than an agency issue. The seller, UHC, agreed to provide health insurance to the buyer, Plaintiff, who in turn agreed to pay via automatic payments. The FAC alleges only that Plaintiff (1) controlled how UHC obtained payment by "identifying the credit card to be charged," and (2) retained the power to cancel the autopay agreement. Even taking Plaintiff's well-pled allegations as true, the record does not reflect UHC's intention to enter into an agency agreement but rather reflects a commercial agreement featuring terms and controls found in standard business transactions. Accordingly, the Court concludes that the relationship between Plaintiff and UHC with regards to the autopay agreement was that of a buyer and seller rather than a principal and agent. See Moss, 77 Wn.2d at 403. And because Plaintiff fails to establish the agency relationship, she also fails to show that UHC owed her a fiduciary duty under Washington law.

Plaintiff's agency argument is an attempted end-around of Washington's well-settled guidance that insurers do not owe a true fiduciary duty to the insureds. However, Plaintiff fails to adequately allege that her purported agent acted on her behalf and under her control. The Court further finds that Plaintiff's fiduciary theory cannot be salvaged through amendment. Therefore, the Court GRANTS UHC's motion as to the fiduciary duty claim. That claim is DIMISSED WITH PREJUDICE.

1  C.    Consumer Protection Act

2         UHC next argues that Plaintiff's third claim, which alleges that UHC's practices violated

3  the Washington Consumer Protection Act, RCW § 19.86.010 et seq., does not satisfy federal

4  pleading standards because it "consists [only] of the formulaic recitation of the five CPA

5  elements." (Mot. at 12–13 (citing Twombly, 550 U.S. at 570.) The Court agrees.

6         "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act

7  or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a

8  person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166

9  Wn.2d 27, 37 (2009) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105

10 Wn.2d 778, 784 (1986)). The FAC—like the state court complaint it succeeds—merely lists a

11 conclusory recitation of the elements of a CPA claim. (See, e.g., FAC ¶ 51 ("Defendants'

12 conduct caused injury to Shepard's 'business or property,' as those terms are defined for

13 purposes of the CPA."); see also, e.g., Dkt. No. 1-1 ¶ 44 (same).) Now that the case has been

14 removed to federal court, Plaintiff must allege the type of "factual content that allows the court

15 to draw the reasonable inference that the defendant is liable for the misconduct alleged" for each

16 element of her CPA claim. Iqbal, 445 U.S. at 678; see also Cousineau v. Microsoft Corp., 992 F.

17 Supp. 2d 1116, 1128 (W.D. Wash. 2012) ("In the absence of more specific facts demonstrating

18 that [plaintiff] or members of the purported class actually sustained injury, [plaintiff's] claim

19 under the CPA must fail."). The Court DISMISSES Plaintiff's CPA claim WITHOUT

20 PREJUDICE.

21 D.    Estoppel/waiver

22         UHC finally argues that Plaintiff's fifth cause of action, "estoppel/waiver," should be

23 dismissed for failing to articulate a specific legal theory. The Court agrees. In Washington,

24

estoppel and waiver are distinct legal theories. "[E]quitable estoppel is based upon a representation of existing or past facts, while promissory estoppel requires the existence of a promise" Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 259 (1980)). Meanwhile, "waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." Dombrosky v. Farmers Ins. Co. of Washington, 84 Wn. App. 245, 255 (1996), as amended (Feb. 7, 1997) (citing Bowman v. Webster, 44 Wn.2d 667, 669 (1954)). By combining the two claims under the same cause of action, Plaintiff has deprived UHC of "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545. Additionally, the FAC does not specify whether equitable estoppel or promissory estoppel form the basis of Plaintiff's "estoppel" claim. Although Plaintiff argues that her claim sounds in the former, (see Dkt. No. 18 at 15 (arguing that "Shepard properly asserts [equitable] estoppel"), the Court disregards those arguments because they reach beyond the domain of the complaint, see Schneider v. Cali. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Accordingly, the Court DISMISSES Plaintiff's "estoppel/waiver" claim WITHOUT PREJUDICE.

## CONCLUSION

Because autopay agreement does not create an agency agreement between Plaintiff and UHC, Plaintiff's breach of fiduciary duty claim cannot stand. The Court does not see how Plaintiff can salvage the theory upon amendment, particularly in light of Washington State's rejection of arguments that insurers owe a true fiduciary duty to their insureds. Accordingly, the Court GRANTS UHC's Motion as to Plaintiff's breach of fiduciary duty claim. That claim is

1   DISMISSED WITH PREJUDICE. Additionally, the Court GRANTS UHC's Motion as to

2   Plaintiff's CPA claim and "estoppel/waiver" claim. Those two claims are DISMISSED

3   WITHOUT PREJUDICE. The Court GRANTS Plaintiffs leave to amend the FAC as to her CPA

4   claim and "estoppel/waiver" claim within 30 days of this Order.

5        The clerk is ordered to provide copies of this order to all counsel.

6        Dated February 12, 2025.

7

8                              Marsha J. Pechman

9                              United States Senior District Judge